COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| AERIELLE AVINA KILGORE, | § | |
| | | No. 08-17-00172-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | Criminal District Court No. 1 |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20120D05387) |
| | § | |

## **O P I N I O N**

Appellant was convicted of unlawful possession of marijuana more than five pounds but less than fifty pounds.   In her sole issue on appeal, Appellant contends the trial court abused its discretion in denying her an Article 38.23(a) instruction, asserting the evidence raised a factual dispute regarding the legality of the search of her luggage.   We affirm.

### **BACKGROUND**

This case involves the discovery of several pounds of marijuana in a suitcase in the luggage compartment of an Amtrak train and whether a fact issue was raised regarding the legality of the search.   On November 1, 2012, United States Border Patrol Agent Jesus Arredondo was on patrol at the Amtrak station in El Paso, Texas.   With him was his assigned canine, Zina.   It was Arredondo's regular duty to patrol this Amtrak station because narcotics are frequently sent

through El Paso to facilitate their entry into the eastern part of the United States.

On that day, Arredondo and Zina began their inspection as they customarily did, starting at the back of the train and working their way to the front. Arredondo was conducting an open-air search of the luggage compartment of the coach area of the train when Zina "heavily" alerted to a pink Tourister suitcase on the right side of the compartment. When Arredondo observed his canine's reaction, he contacted a detective on site and informed him of the alert. Once the detective arrived, Arredondo pointed out the pink suitcase to him and then left to continue searching.

Detective Gardea responded to Arredondo's call. He and Detective Lucero were assigned to work narcotics interdiction that day and were dressed in plainclothes. After Arredondo directed Gardea to the pink suitcase, Gardea began pulling it out to further inspect it. As he was doing so, the Appellant, Aerielle Kilgore, entered the compartment from the passenger area. She approached Gardea and told him the suitcase he was pulling out belonged to her. When he asked her to confirm if she meant the pink suitcase, she stated she did. Kilgore then turned around and left the compartment without saying anything further. Gardea went ahead and removed the suitcase from the rack to inspect it. Moments later, Detective Lucero arrived in the compartment and Gardea told him what had happened regarding the canine's alert and Kilgore's statement that she was the owner of the suitcase. The detectives then noticed Kilgore return to the compartment. Lucero approached her and identified himself as law enforcement, showing her his badge. He asked Kilgore if the pink suitcase belonged to her, and this time she denied ownership. Deeming the suitcase to be abandoned based on her response, the detectives opened it and found eight vacuum-sealed bundles of marijuana. Lucero placed Kilgore under arrest and escorted her off the

2

train.

After Kilgore was arrested, Gardea went to the passenger car and located the seat where she had been sitting. There, he found a matching pink Tourister carry-on suitcase and a purse containing Kilgore's identification card.

Kilgore was charged with unlawful possession of more than five pounds but less than fifty pounds of marijuana. During trial, Detective Gardea testified to the events described above. On cross-examination of Gardea, Kilgore attempted to establish that the pink suitcase containing the marijuana could not be deemed abandoned based solely on her denial of ownership because the suitcase was in the luggage bin and could have belonged to any other passengers. Kilgore argued that Gardea and Lucero had failed to ask any other passengers whether the suitcase belonged to them, therefore, they could not have reasonably determined it was abandoned based on her response alone. Gardea countered that the detectives had considered the totality of the circumstances in determining the bag was abandoned, especially her initial claim of ownership of the suitcase. At the charge conference, Kilgore requested an Article 38.23(a) instruction to allow the jury to consider whether the pink suitcase was searched unlawfully. The State opposed the instruction, asserting Kilgore had failed to raise a factual question on the legality of the search and was raising a purely legal issue. The trial court denied Kilgore's request.

The jury found her guilty as charged. The court assessed punishment at ten years' imprisonment and probated the sentence, placing Kilgore on seven years' community supervision. The trial court also assessed a $2,000 fine, $1,500 of which was probated, and assessed 500 hours of community service. This appeal followed.

## DISCUSSION

3

In her sole issue on appeal, Kilgore contends the trial court erred in denying her requested instruction because she had raised a fact issue about the legality of the detectives' warrantless search of the pink Tourister suitcase.

### *Standard of Review*

We review claims of jury-charge error by first determining whether an error exists in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005). If we find error in the charge, we then analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex.Crim.App. 2003)(en banc). The level of harm required for reversal depends on whether the defendant objected to the error at trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985)(op. on reh'g). If the defendant timely objected to the error, the error is analyzed under the "some harm" standard. *Id*. The judgment may not be reversed unless the error was calculated to injure the rights of the defendant. *Id*.

### *Applicable Law*

Article 38.23(a) of the Texas Code of Criminal Procedure provides that:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX.CODE CRIM.PROC.ANN. art. 38.23(a).

A defendant is entitled to an Article 38.23(a) instruction if he can establish the following: (1) the evidence heard by the jury raised an issue of fact; (2) the evidence on that fact is

4

affirmatively contested; and (3) the contested factual issue is material to the lawfulness of the challenged conduct. *Hamal v. State*, 390 S.W.3d 302, 306 (Tex.Crim.App. 2012).

### *Analysis*

Here, Kilgore argues there was a factual dispute raised regarding her abandonment of the suitcase based on what she contends is a conflict in the testimony of Detectives Gardea and Lucero. She asserts Detective Gardea testified she claimed ownership of the pink suitcase and Detective Lucero testified she denied owning it; therefore, the issue of whether she actually abandoned the suitcase should have been submitted to the jury because the jury could choose to believe she told Detective Gardea she owned the suitcase and disbelieve she told Detective Lucero she did not own it. However, her argument undergirding the fact issue is merely a description of the sequence of events. Kilgore initially claimed ownership of the pink suitcase when she encountered a stranger dressed in plainclothes pulling it down from the luggage rack. When she subsequently returned to the luggage compartment and was confronted by a man identifying himself as a police officer with his badge, she denied ownership of the suitcase. Both Detective Gardea and Detective Lucero testified she denied ownership of the suitcase when Lucero asked her if it belonged to her. Detective Gardea, under cross-examination, never contradicted this sequence of events. The record reveals no factual dispute as to what she told the detectives. Further, no testimony was presented to negate the detectives' testimony of Kilgore's statements. *See Hamal*, 390 S.W.3d at 306 (holding defendant was not entitled to an Article 38.23(a) instruction where there was no factual dispute regarding what the defendant and officer said and did during their interaction). Kilgore points to no testimony or other evidence that conflicts with any of the testimony of the detectives. There mere fact that she initially claimed ownership of the suitcase and then later

5

denied she owned it does not create a factual dispute that she made those statements. *Id.* Because no evidence contradicts the detectives' testimony, there was no factual dispute regarding what she told the detectives about her ownership of the suitcase for the jury to consider. *Id.* Accordingly, the trial court did not abuse its discretion in denying Kilgore's request for an Article 38.23(a) instruction. Issue One is overruled.

## CONCLUSION

Having overruled Appellant's sole issue on appeal, the judgment of the trial court is affirmed.

July 5, 2019

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)